UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| THE OHIO CASUALTY INSURANCE COMPANY, | ) |
|---|---|
| Plaintiff, | ) ) ) ) |
| v. | ) No. 2:19-cv-00023 ) ) |
| JOHN O. ADAMS, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

The Ohio Casualty Insurance Company ("OCIC") brought this diversity action against John O. Adams to collect on an alleged indemnity agreement. Before the Court is OCIC's Motion for Summary Judgment (Doc. No. 21; see also Doc. No. 21-1), to which Adams filed a response in opposition (Doc. Nos. 23, 25) and OCIC replied (Doc. No. 28). For the following reasons, OCIC's motion will be denied.

**I.  BACKGROUND AND UNDISPUTED FACTS[1]**

In July 2011, Adams' uncle passed away in Indiana and Adams became the personal representative of his estate. (Adams Aff. ¶¶ 3, 5.)[2] Although the parties do not directly address this point, it appears that Indiana law required Adams to obtain a probate bond before he could assume his duties as personal representative.

---

[1] The facts in this section are undisputed unless noted otherwise and are drawn from the undisputed portions of the parties' statements of facts (Doc. Nos. 26, 27), the exhibits, depositions, and affidavits submitted in connection with the summary judgment briefing, and portions of the Complaint (Doc. No. 1) that are not contradicted by the evidence in the record. For ease of reference, the Court will refer to Adams' affidavit (Doc. No. 24) as "Adams Aff."

[2] The Court may consider an affidavit on summary judgment unless it directly contradicts the affiant's prior sworn testimony. Reich v. City of Elizabethtown, Ky., 945 F.3d 968, 975–76 (6th Cir. 2019).

On July 22, 2011, Adams allegedly applied to OCIC for a probate surety bond and agreed to indemnify OCIC and hold it harmless against all liability, loss, and expenses it may incur for executing a bond on his behalf. (Doc. No. 21-1 at 2–3; Compl. ¶ 4; Doc. No. 1-2.) Based on this alleged indemnity agreement, OCIC (the surety) issued a $300,000 bond on behalf of Adams (the principal) to the State of Indiana (the obligee) to ensure Adams would faithfully execute his duties as personal representative of his uncle's estate. (Compl. ¶ 5; Doc. No. 1-3.) However, Adams denies seeing, signing, or understanding the consequences of the bond application and indemnity agreement and has sworn under oath that "[i]f I signed it, it was inadvertent and without any informed understanding of what I was signing." (Adams Aff. ¶ 7; see also Doc. No. 25 at 2–3.)

A few years later, Adams' niece, Kylee Feist, filed a petition in the estate proceedings to remove Adams as personal representative, alleging that he breached his duties to the estate by failing to identify her as an heir and by "committing various acts of malfeasance, misfeasance, and defalcation with respect to his management and handling of Estate assets." (Compl. ¶ 7; Doc. No. 1-5 at 2.) Adams contends that Feist's "allegations were inaccurate and misleading," but "many different financial and legal problems . . . overwhelmed [him] and deprived [him] of the financial and emotional resources to properly defend" against them. (Adams Aff. ¶¶ 12, 15.) Moreover, Adams allegedly lacked supporting documents to contest Feist's claims because (1) he gave some of the estate records to Feist's counsel without keeping his own copies, (2) some of them burned in a house fire, and (3) some of them were held hostage by his ex-wife. (Id. ¶¶ 15, 22.) Adams ultimately resigned as personal representative of the estate in February 2015, and the Indiana probate court replaced him with J.A. Whitmer. (Compl. ¶ 8–9; see also Doc. No. 24-8.)

Whitmer and Feist subsequently filed a lawsuit against Adams and OCIC (as surety under the bond) in Indiana state court claiming that Adams breached his duties as personal representative

of the estate (hereinafter, "Indiana Lawsuit"). (Doc. No. 26 ¶ 6.) Because Adams could not afford to hire an attorney to defend against these claims, OCIC had to pay for its own defense and eventually settled the case for $260,000 (Doc. No. 27 ¶¶ 10, 16.) The Indiana state court accepted the settlement and found that "Adams, as Personal Representative, has dissipated the Estate's assets for his own use and benefit." (Doc. No. 1-5 at 2.)

To date, Adams has not paid any money to OCIC for settling the Indiana Lawsuit. (Doc. No. 26 ¶ 14.2.) As a result, OCIC brought this breach of contract action against Adams to collect under the indemnity agreement.[3] OCIC has now moved for summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and internal quotation marks omitted).

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the

---

[3] OCIC claims that Adams owes it $288,389.25 (plus prejudgment interest and attorney's fees in prosecuting this action), which represents the $260,000 settlement, $27,279.25 in attorney's fees, and $1,110 in unpaid premiums for the surety bond. (Compl. ¶¶ 13–15, 22.)

3

matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

### III. ANALYSIS

OCIC argues that it is entitled to summary judgment because there is no dispute that Adams breached their agreement and failed to indemnify OCIC for settling the Indiana Lawsuit. (Doc. No. 21 at 1–2.) In response, Adams contends that summary judgment is inappropriate because there are genuine disputes of material fact regarding whether OCIC acted reasonably and in good faith in investigating and settling that case. (Doc. No. 23 at 1–2.) The Court agrees with Adams.

Tennessee law, which the parties agree applies to this diversity dispute,[4] requires that, in order for a surety to recover under an indemnity agreement, the surety must reasonably investigate a claim made against the bond and all possible defenses and act in good faith in settling the claim. Old Republic Sur. Co. v. Eshaghpour, No. M1999-01918-COA-R3-CV, 2001 WL 1523364, at *2–3 (Tenn. Ct. App. Nov. 30, 2001) (citations omitted). Thus, when a surety seeks indemnification for claims settled over the principal's protest, the principal may assert an affirmative defense that the surety did not act reasonably to investigate those claims or settle them in good faith. Id. The Tennessee Supreme Court has acknowledged that "bad faith" includes both "instances of outright deception and untruthfulness" and "actions in knowing or reckless disregard of customers

---

[4] It is unclear whether Tennessee or Indiana law should apply here because the indemnity agreement does not contain a choice-of-law provision and the record is silent as to where the agreement was made. See Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973) ("[W]hen the dispute involves questions concerning rights and obligations under a contract," Tennessee courts apply "the law of the state where the contract was made, absent a contrary intent."). But given the parties' overwhelming agreement on this issue, the Court may infer that the parties intended for Tennessee law to apply regardless of whether the contract was made in Tennessee or Indiana.

4

contractual rights." Glazer v. First Am. Nat'l. Bank, 930 S.W.2d 546, 549–50 (Tenn. 1996). However, "[g]ood faith, or the lack thereof, as well as reasonableness, should be determined in the context of the specific factual situation involved." Gulf Ins. Co. v. Construx, Inc., No. M1999-02803-COA-R3-CV, 2001 WL 840240, at *19 (Tenn. Ct. App. July 26, 2001); see also Safeco Ins. Co. v. Criterion Inv. Corp., 732 F. Supp. 834, 841 (E.D. Tenn. 1989) ("What is 'good faith' depends, it is obvious, upon the facts and circumstances of each case.").

Here, Adams has provided evidence to support his affirmative defense that OCIC did not settle and investigate the Indiana Lawsuit reasonably and in good faith. For example, OCIC admits that it did not take Adams' deposition or seek written discovery from him before reaching a settlement. (Doc. No. 27 ¶¶ 19, 25.) Adams also contends that OCIC, among other things, failed to subpoena the documents and records that Adams had given to Feist's counsel, failed to hire an accountant as a consulting and trial expert to review Adams' accounting records, did not serve written discovery on Whitmer or Feist, did not notify Adams about the settlement, and did not follow up on leads provided by Adams, including that he was a 50% beneficiary of his uncle's estate. (Adams Aff. ¶¶ 30–35; Doc. No. 27 ¶¶ 20, 23, 28–29, 73–75, 79, 81, 85–86, 90–91; see also Doc. No. 25 at 3–4.) Although OCIC disputes these allegations and responds with several facts of its own to support the reasonableness of its investigation and decision to settle the Indiana Lawsuit for less than the $300,000.00 claim against the bond (Doc. No. 28 at 2–3), the Court finds that Adams has presented enough evidence to survive summary judgment. Accordingly, the issue of whether OCIC in fact acted reasonably and in good faith must be resolved by the jury at trial, rather than by the Court on summary judgment. See Gulf Ins. Co., 2001 WL 840240, at *20–21 (denying summary judgment because Defendants' deposition and affidavit testimony created a

5

genuine issue of material fact regarding whether the plaintiff-surety "acted reasonably and in good faith in settlement of the [bond] claims and the expenses incurred therein").

## IV. CONCLUSION

For the foregoing reasons, OCIC's Motion for Summary Judgment (Doc. No. 21) is **DENIED** and this case will proceed to trial.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE